1
2
3
4
5
6
7
8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  JASON LATRELL THOMAS,                    Case No. 1:06-cv-01332 LJO JLT (PC)

12            Plaintiff,                     FINDINGS AND RECOMMENDATIONS
                                             RECOMMENDING THAT PLAINTIFF'S
13       vs.                                 MOTION FOR PARTIAL SUMMARY
                                             JUDGMENT BE DENIED
14  D. SHEPPARD-BROOKS, et al.,
                                             (Doc. 81)
15            Defendants.

16  _____/

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C.

18  § 1983.  This action is proceeding on Plaintiff's Eighth Amendment failure to protect claims against

19  Defendants D. Sheppard-Brooks, Garza, Gonzales, Wilber, and James.  Plaintiff now moves for partial

20  summary judgment on his failure to protect claims against Defendants Gonzales, Wilber, and James

21  (herein "Defendants").  Defendants have opposed the motion.[1]  For the reasons discussed below, the

22  Court recommends that the pending motion be **DENIED**.

23  I.      **BACKGROUND**

24          A.      **Procedural Background**

25          This matter is proceeding on Plaintiff's third amended complaint wherein Plaintiff alleges

26  violations of his constitutional rights during his confinement at California State Prison – Corcoran.

27  _____

28          [1] Defendants Sheppard-Brooks, Garza Gonzales, Wilber, and James have also filed a cross-motion for summary judgment.  (Doc. 94.)  That motion will be addressed in separate findings and recommendations.

                                             1

(Doc. 20.)  The Court screened the third amended complaint and found that it stated cognizable claims against: (1) Defendants Wilber, Frescura, Price, Castro, Vikjord, and Hernandez for violations of Plaintiff's freedom of expression under the First Amendment; (2) Defendants Wilber, Frescura, Price, Castro, Vikjord, and Hernandez for retaliation in violation of the First Amendment; (3) Defendants Wilber, Frescura, Price, Castro, Vikjord, and Hernandez for the use of excessive force in violation of the Eighth Amendment; (4) and Defendants D. Sheppard-Brooks, Garza, Gonzales, Wilber, and James for failing to protect Plaintiff in violation of the Eighth Amendment.  (Doc. 22.)  Plaintiff was provided an opportunity to further amend his pleadings; however, Plaintiff elected to proceed only on those claims found cognizable by the Court.  (Doc. 23.)

On June 17, 2009, Defendants D. Sheppard-Brooks, Garza, Gonzales, Wilber, James, Vikjord, Price, Castro, Hernandez, and Frescura moved to dismiss this action for Plaintiff's failure to state a claim and for Plaintiff's failure to exhaust available administrative remedies prior to filing suit.  (Doc. 48.) On October 16, 2009, U.S. Magistrate Judge Sandra M. Snyder issued findings and recommendations recommending that the motion to dismiss be granted with respect to Plaintiff's freedom of expression claims, retaliation claims, and excessive force claims.  (Doc. 63.)  The findings and recommendations were adopted in full on November 20, 2009, and this action moved forward on Plaintiff's failure to protect claims.  (Doc. 67.)

On December 9, 2009, Defendants D. Sheppard-Brooks, Garza, Gonzales, Wilber, and James filed their answer in this action.  (Doc. 68.)  Discovery ensued thereafter.  (Doc. 69.)  On June 29, 2010, Plaintiff filed the pending motion for partial summary judgment.  (Doc. 81.)  Defendants filed their opposition to the motion on July 16, 2010.  (Doc. 82.)

**B.      Factual Background**

Plaintiff's allegations regarding his failure to protect claims are as follows.  On September 14, 2005, while confined at Pelican Bay State Prison ("PBSP"), Plaintiff was found guilty of two separate rules violations for indecent exposure.  (Doc. 20 at 7.)  As a result, an "R" suffix was attached to his central file.  (Id.)  An "R" suffix is generally reserved for those prisoners who have been convicted of sexual offenses.  (Id.)  Plaintiff filed an inmate appeal protesting the "R" suffix because it placed him at risk of being attacked by other inmates.  (Id. at 7-8.)  Nevertheless, the "R" suffix was not removed

1   from Plaintiff's central file, and on April 14, 2006, Plaintiff was transferred to California State Prison

2   – Corcoran ("Corcoran").  (Id. at 8.)

3          At Corcoran, Plaintiff continued to complain that the "R" suffix posed a serious risk to his safety.

4   (Id.)  On April 27, 2006, Plaintiff specifically made this known to Defendant Sheppard-Brooks at a

5   classification hearing, but Defendant Sheppard-Brooks ignored Plaintiff's complaints.  (Id.)  On May,

6   11, 2006, Plaintiff filed an emergency inmate appeal regarding this matter, which Defendant Gonzales

7   "carelessly" denied.  (Id.)  On July 12, 2006, Defendant Gonzales finally conceded that the "R" suffix

8   was inappropriate, but still failed to take remedial action.  (Id. at 9.)

9          On July 29, 2006, Plaintiff's cellmate, Stacey Sharlhorne, discovered the presence of the "R"

10  suffix in Plaintiff's central file and attacked Plaintiff.  (Id.)  Later that day, inmate Sharlhorne notified

11  Defendants Wilber and James that he attacked Plaintiff, and would do so again, because Plaintiff had

12  an "R in [his] jacket."  (Id.)  Defendants Wilber and James did not heed Inmate Sharlhorne's warning.

13  (Id.)  Later that day, Inmate Sharlhorne attacked Plaintiff for the second time.  (Id.)

14         Based on these allegations, Plaintiff now claims that Defendants Sheppard-Brooks and Gonzales

15  failed to protect him because the two defendants should have removed the "R" suffix from Plaintiff's

16  file and should have removed Plaintiff from double cell housing.  As to Defendants Wilber and James,

17  Plaintiff claims that they failed to protect him because they should have separated Plaintiff and his

18  cellmate after learning that Plaintiff was attacked by his cellmate, and would be again, because of the

19  "R" suffix.

20  **II.      LEGAL STANDARD**

21         Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials

22  on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

23  is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment

24  "always bears the initial responsibility of informing the district court of the basis for its motion, and

25  identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on

26  file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

27  material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

28  Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate

that no reasonable trier of fact could find other than for the moving party." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> (citation omitted).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." <u>FTC v. Stefanchik</u>, 559 F.3d 924, 929 (9th Cir. 2009) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986)) (emphasis in the original). Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. <u>Stefanchik</u>, 559 F.3d at 929. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." <u>Soremekun</u>, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." <u>Anderson</u>, 477 U.S. at 255. <u>See</u> <u>T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987). Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## III.    DISCUSSION

### A.    Local Rule 260(a)

As an initial matter, Defendants argue that the pending motion for partial summary judgment fails to comply with the procedural requirements of Local Rule 260(a). The Court agrees. Local Rule 260(a) provides:

> Each motion for summary judgment or summary adjudication shall be accompanied by a "Statement of Undisputed Facts" that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other documents relied upon to establish that fact. The moving party shall be responsible for the filing of

4

1    all evidentiary documents cited in the moving papers.

2    In his motion, Plaintiff fails to cite to the particular portion of the documents upon which each

3    of his undisputed facts rely.  The Court is left to "scour the record in search of a genuine issue of triable

4    fact."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  In this regard, Plaintiff has not met his

5    initial responsibility of informing the Court of the basis for his motion and identifying those portions of

6    the record which he believes demonstrates the absence of a genuine issue of material fact.  See Celotex,

7    477 U.S. at 323.  The pending motion should be denied for this reason alone.  See, e.g., Luna v. Hoa

8    Trung Vo, CV F 08-1962 AWI SMS, 2010 WL 4878788, at *2-3 (E.D. Cal., Nov. 16, 2010) (striking

9    undisputed facts and denying summary judgment where plaintiff's motion failed to comport with Local

10   Rule 260(a)).  Nevertheless, the Court will consider the merits of the motion.

11   **B.    Eighth Amendment**

12   The Court now turns to the merits of the pending motion.  Under the Eighth Amendment, "prison

13   officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  Farmer v.

14   Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558

15   (1st Cir. 1988)).  To establish a violation of this duty, a prisoner must demonstrate that prison officials

16   were "deliberately indifferent to a serious threat to the inmate's safety."  Farmer, 511 U.S. at 834.  This

17   requires the prisoner to satisfy both an objective and a subjective requirement.  First, the prisoner must

18   demonstrate that the alleged deprivation was, in objective terms, "sufficiently serious."  Id. at 834

19   (quoting Wilson v. Seitner, 501 U.S. 294, 298 (1991)).  Second, the prisoner must demonstrate that

20   prison officials acted with a sufficiently culpable state of mind.  Prison officials must have known of and

21   disregarded an excessive risk to the prisoner's safety.  Id. at 837.  In other words, an official must both

22   be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

23   and he must also draw the inference.  Id.

24   In this case, the parties do not appear to dispute that Plaintiff and Inmate Sharlhorne were

25   involved in a physical altercation and that as a result, Plaintiff suffered injuries to his head, back, and

26   neck.  (See Doc. 81 at 8-17.)  What the parties apparently do dispute is whether Defendants Gonzales,

27   Wilber, and James ever knew of and disregarded a serious risk to Plaintiff's safety.  In other words, this

28   action hinges upon whether there is evidence demonstrating that Defendants Gonzales, Wilber, and

1  James had sufficiently culpable states of mind.

2                          **1.    Defendant Gonzales**

3       Plaintiff contends that Defendant Gonzales knew that Plaintiff faced a serious threat of being

4  attacked due to the "R" suffix in his central file. (Doc. 81 at 2.)  Despite this knowledge, Plaintiff argues

5  that Defendant Gonzales failed to remove the "R" suffix from Plaintiff's central file and failed to remove

6  Plaintiff from double cell housing to ensure Plaintiff's safety.  (Id.)

7       In support of his argument, Plaintiff apparently relies on his inmate appeal filed May 11, 2006,

8  and Defendant Gonzales' response to the appeal on June 14, 2006.  (Doc. 82-7 at 2.)  Therein, Plaintiff

9  complains that he faces "an unreasonable danger of assault" due to the "R" suffix in his central file. (Id.)

10  Plaintiff also states that it is common knowledge that sex offenders with an "R" suffix are subject to

11  attack by other inmates.  (Id. at 5.)  Plaintiff demands that the "R" suffix be removed from his central

12  file immediately.  (Id. at 2.)  In response, Defendant Gonzales states that an "R" suffix does not always

13  denote that an inmate has sexually assaulted another inmate, and if Plaintiff has been mistreated by

14  prison staff he should file a staff complaint.  (Id.)

15       Plaintiff also relies on Defendant Gonzales' responses to Plaintiff's interrogatories and requests

16  for admissions to establish that Defendant Gonzales could have taken steps to ensure Plaintiff's safety.

17  (Doc. 81 at 3.)  In those discovery documents, Defendant Gonzales states that she could have alerted the

18  Sergeant and floor officer regarding Plaintiff's safety concerns.  (Id. at 29.)  Plaintiff would then have

19  been interviewed by staff, and the interviewing officer would have made a housing recommendation for

20  the Institutional Classification Committee's ("ICC's") consideration.  (Id.)  The ICC would then be

21  responsible for determining  whether Plaintiff's safety concerns warranted single cell housing.  (Id. at

22  29, 35-36.)

23       Drawing all inferences from the evidence in favor of Defendant Gonzales as the non-moving

24  party, the Court finds that Plaintiff has not met his initial burden of demonstrating beyond controversy

25  that Defendant Gonzales knew of and disregarded a serious risk to Plaintiff's safety.  To be sure, in order

26  to prevail on the merits of his claim, Plaintiff need not establish that Defendant Gonzales believed to a

27  "moral certainty" that Plaintiff was going to be attacked "at a given place at a time certain."  Berg v.

28  Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  However, Defendant Gonzales must have had more than

a "mere suspicion" that an attack would occur before she can be held liable for failing to take steps to prevent such an assault. (Id.)  In this regard, Plaintiff's evidence falls short.  Plaintiff's inmate appeal simply does not establish, in of itself, that Defendant Gonzales had more than a general suspicion that Plaintiff would be attacked by another inmate due to the "R" suffix.  Plaintiff fails to provide any evidence showing that Defendant Gonzales was aware that other inmates had threatened Plaintiff due to the "R" suffix or that other inmates even knew Plaintiff's had an "R" suffix in his file.

Even assuming Plaintiff had met his initial burden on summary judgment, the Court finds that Defendant Gonzales has presented affirmative evidence from which a jury could find in her favor.  In opposing the pending motion, Defendant Gonzales declares that she was never aware of an actual risk to Plaintiff's safety due to the "R" suffix. (Doc. 82-6 at ¶ 27.) According to Defendant Gonzales, based upon her 11 years experience, an "R" suffix does not necessarily place an inmate at risk of harassment or assault by other inmates. (Id. at ¶ 14-15.)  Moreover, Defendant Gonzales asserts that at the time she received Plaintiff's appeal, Plaintiff was housed in the Security Housing Unit and was not assigned a cellmate. (Id. at ¶ 19.)  Therefore, according to Defendant Gonzales, she did not believe Plaintiff faced imminent harm because he was not exposed to other inmates. (See id. at ¶ 19.)

Based on all the evidence presented, a reasonable jury could conclude that Defendant Gonzales was not actually aware of a substantial risk to Plaintiff's safety.  Accordingly, Plaintiff is not entitled to summary judgment on this claim.

**2.      Defendant Wilber**

Plaintiff argues that Defendant Wilber knew that a physical altercation occurred between him and his cellmate regarding the "R" suffix and that a second attack was imminent. (Doc. 81 at 3-4.) Plaintiff argues further that despite having this knowledge, Defendant Wilbur left Plaintiff to "fend for himself" and only separated the two inmates after a second fight had occurred. (Id. at 3-4.)  Plaintiff contends that Defendant Wilbur should have taken protective action earlier.

In support of his argument, Plaintiff points to the declarations of Inmates Sharlhorne, Mitchell, and E. Thomas.[2]  Inmate Sharlhorne declares that on July 29, 2006, he and Plaintiff became embroiled

---

[2] Plaintiff has not attached these declarations to the pending motion.  The declarations are, however, attached to Plaintiff's opposition to Defendants' motion to dismiss. (Doc. 49.)

in a fight after he discovered that Plaintiff had an "R" suffix. (Doc. 49 at 71.) Inmate Sharlhorne avers that Defendant Wilber was made aware of the situation and that Defendant Wilber stated that he would alert the sergeant. (Id.) According to Inmate Sharlhorne, he and Plaintiff became embroiled in a second fight thirty minutes later. (Id.) Inmate Sharlhorne declares that Defendant Wilber responded to the second fight and then, and only then, had the two inmates separated. (Id.) This account of the events is largely corroborated by Inmates Mitchell and E. Thomas in their respective declarations. (See Doc. 49 at 63-68.)

Defendant Wilbur counters that prior to the second fight, he was not aware that Plaintiff faced any danger from his cellmate. In his own declaration, Defendant Wilbur avers that on July 29, 2006, Inmate Sharlhorne informed him that the two inmates wanted to be separated because they were not getting along. (Doc. 82-5 at ¶ 3.) Defendant Wilbur declares that he did not understand this to be an urgent request because in his 12 years experience, it is not unusual for inmates to make such requests. (Id. at ¶ 4-6.) According to Defendant Wilbur, he did not know that Inmate Sharlhorne and Plaintiff had just been in a fight, did not know that inmate Sharlhorne knew of Plaintiff's "R" suffix, and did not know that a second fight was imminent. (Id. at ¶ 7-9.) Defendant Wilbur concludes that at no point did he intentionally leave Plaintiff to "fight it out" with his cellmate. (Id. at ¶ 17.)

Upon consideration of the evidence, the Court finds that there is a genuine issue of material fact as to Defendant Wilber's state of mind. Whether Defendant Wilber had actual knowledge as to the imminence of a second fight between Plaintiff and his cellmate depends on which account of the events is found credible. This determination must be made by the factfinder. Therefore, Plaintiff is not entitled to summary judgment on this claim. See Nelson v. City of Davis, 571 F.3d 924, 929 (9th Cir. 2009) (credibility determinations must be left to the factfinder and not decided by a judge on a motion for summary judgment).

### 3. Defendant James

Plaintiff's argument against Defendant James is similar to the argument Plaintiff asserts against Defendant Wilber. In Plaintiff's view, Defendant James knew Plaintiff and his cellmate were fighting because Inmate Sharlhorne had discovered the "R" suffix in Plaintiff's central file. (Doc. 81 at 3.) Nevertheless, according to Plaintiff, Defendant James failed to separate the two inmates, and instead,

8

1  left Plaintiff to "fight it out" with Inmate Sharlhorne.  (Id. at 3-4.)

2      In order to establish this, Plaintiff relies on (1) the declarations of Inmates Sharlhorne, Mitchell,

3  and E. Thomas; (2) the rules violation report regarding the July 29, 2006 altercation; and (3) Defendant

4  James' responses to Plaintiff's interrogatories and requests for admissions.  These documents, however,

5  do not support Plaintiff's contentions.  First, the only mention of Defendant James in the declarations

6  of Inmates Sharlhorne, Mitchell, and E. Thomas is that Defendant James responded to the second fight,

7  along with Defendant Wilber.  (See Doc. 49 at 63-71.)  Second, the rules violation report regarding the

8  July 29, 2006 altercation does not even mention Defendant James.  (See Doc. 81 at 8-17.)  Finally,

9  Defendant James never admits in Plaintiff's interrogatories or requests for admissions, that she knew

10 that Plaintiff was attacked by Inmate Sharlhorne because of Plaintiff's "R" suffix.  (See Doc. 49 at 47-

11 49, 66-67.)  In fact, Defendant James specifically avers the contrary.  (Doc. 82-4 at ¶ 4.)

12     Therefore, the Court finds that Plaintiff has failed to meet his initial burden in demonstrating that

13 Defendant James was actually aware of a substantial risk to Plaintiff's safety prior to the second fight.

14 Accordingly, Plaintiff is not entitled to summary judgment on this claim.

15     **C.     Qualified Immunity**

16     Defendants also argue in their opposition that they are entitled to qualified immunity.  The Court,

17 however, has already determined that the pending motion should be denied.  Therefore, the Court need

18 not address Defendants' argument at this time.[3]

19 **IV.    CONCLUSION**

20     In sum, Plaintiff's motion for partial summary judgment is not in compliance with Local Rule

21 260(a).  Moreover, genuine issues of material fact remain as to whether Defendants had sufficiently

22 culpable states of mind.  Summary judgment on these claims in Plaintiff's favor is thus unwarranted.

23 Accordingly, it is **HEREBY RECOMMENDED** that Plaintiff's June 29, 2010 motion for partial

24 summary judgment (Doc. 81) be **DENIED**.

25     These findings and recommendations are submitted to the United States District Judge assigned

26 to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).  Within twenty-one days after being

27 served with these findings and recommendations, Plaintiff may file written objections with the Court

28

---

[3] Defendants reassert the qualified immunity defense in their cross-motion for summary judgment.  (Doc. 94.)

and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 3, 2011**                                    **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE