IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LATRELL THOMAS,<br><br>    Plaintiff,<br><br>  vs.<br><br>D. SHEPPARD-BROOKS, et al.,<br><br>    Defendants.<br>_____/ | Case No. 1:06-cv-01332 LJO JLT (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. 94) |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is now proceeding on Plaintiff's Eighth Amendment claims for failure to protect against Defendants Sheppard-Brooks, Garza, Gonzales, Wilber, and James. Pending before the Court is Defendants' motion for partial summary judgment filed pursuant to Federal Rule of Civil Procedure 56. Plaintiff has opposed the motion and Defendants have filed a reply. For the reasons set forth below, the Court recommends that Defendants' motion be **GRANTED**.

**I.     PROCEDURAL HISTORY**

This action is proceeding on Plaintiff's third amended complaint. (Doc. 20.) On January 23, 2009, the Court screened the third amended complaint and found that it states cognizable claims against (1) Defendants Wilber, Frescura, Price, Castro, Vikjord, and Hernandez for violating Plaintiff's right to freedom of expression under the First Amendment; (2) Defendants Wilber, Frescura, Price, Castro, Vikjord, and Hernandez for retaliation in violation of the First Amendment; (3) Defendants Frescura,

1  Wilber, Price, Castro, Vikjord, and Hernandez for the use of excessive force in violation of the Eighth
2  Amendment; (4) and Defendants Sheppard-Brooks, Garza, Gonzales, Wilber, and James for failing to
3  protect Plaintiff in violation of the Eighth Amendment. (Doc. 22.)

4        On June 17, 2009, Defendants D. Sheppard-Brooks, Garza, Gonzales, Wilber, James, Vikjord,
5  Price, Castro, Hernandez, and Frescura moved to dismiss this case for Plaintiff's failure to state a claim
6  and for Plaintiff's failure to exhaust available administrative remedies prior to filing suit. (Doc. 48.)
7  On October 16, 2009, U.S. Magistrate Judge Sandra M. Snyder issued findings and recommendations
8  recommending that the motion to dismiss be granted with respect to Plaintiff's freedom of expression
9  claims, retaliation claims, and excessive force claims, but denied with respect to Plaintiff's failure to
10 protect claims. (Doc. 63.) The assigned District Judge adopted the findings and recommendations in
11 full on November 20, 2009, and this action proceeded forward on Plaintiff's failure to protect claims
12 under the Eighth Amendment. (Doc. 67.)

13       On June 29, 2010, Plaintiff filed a motion for partial summary judgment. (Doc. 81.) Defendants
14 also filed a motion for partial summary judgment on November 19, 2010. (Doc. 94.) On February 4,
15 2011, the Court issued findings and recommendations recommending that Plaintiff's motion be denied.
16 (Doc. 97.) The assigned District Judge adopted the findings and recommendations in full on March 8,
17 2011. (Doc. 98.) Plaintiff filed an opposition to Defendants' motion for summary judgment on June
18 13, 2011 (Doc. 100), to which Defendants filed a reply on June 14, 2011 (Doc. 101).[1]

19 **II.    LEGAL STANDARDS FOR SUMMARY JUDGMENT**

20       Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials
21 on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant
22 is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one which may
23 affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute

---

[1] Plaintiff's opposition simply consists of a short assertion that Defendants Wilber and James deliberately failed to protect him and that all the defendants are not entitled to qualified immunity. (Doc. 100.) Plaintiff suggests that he was unable to file a more thorough opposition because prison officials lost his legal property in August 2010 and as a result Plaintiff does not have Defendants' motion for summary judgment or any of his evidence to fully oppose the motion. (Id.) Defendant's motion for summary judgment, however, was not filed until October 19, 2010. And, in any event, other than his motion filed November 17, 2010, Plaintiff has not requested additional time to file a more complete opposition despite being given more than ample time to do so.

regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party.  Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. Stefanchik, 559 F.3d at 929. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

**III.     UNDISPUTED FACTS[2]**

While incarcerated at Pelican Bay State Prison, Plaintiff received two rule violation reports for indecent exposure. (DUF 1.) Under a pilot program in effect at Pelican Bay State Prison, Plaintiff had an "R" suffix affixed to his custody designation. (DUF 3.) An "R" suffix is used as an administrative custody classification code for denoting inmates who have histories of sexual offenses. (DUF 4.) The classification is considered confidential. (DUF 5.)

On April 14, 2006, Plaintiff was transferred from Pelican Bay State Prison to California State Prison, Corcoran. (DUF 21.) Defendant Garza was assigned to be Plaintiff's correctional counselor. (DUF 22.) On or around April 20, 2006, Plaintiff alerted Defendant Garza of his safety concerns with respect to the "R" suffix. (DUF 23.) Correctional counselors such as Defendant Garza, however, lack authority to unilaterally remove an "R" suffix from an inmate's file. (DUF 10.) Nor do correctional counselors have the ability to determine an inmate's housing assignment (whether an inmate is housed in a single or double cell). (Id.) In any event, Plaintiff was confined in the Security Housing Unit and was not exposed to other inmates at the time. (DUF 24, 36.)

On April 27, 2006, Plaintiff appeared for his hearing in front of the Institutional Classification Committee ("ICC"), which included Defendants Garza and Sheppard-Brooks. (DUF 25, 48.) The ICC determines an inmate's housing assignment. (DUF 7.) At the hearing, Plaintiff reiterated his safety concerns regarding the "R" suffix in his file. (DUF 25.) The ICC, however, decided that Plaintiff did not meet the criteria for single cell housing and cleared Plaintiff to live with a cellmate. (DUF 26.) An "R" suffix does not entitle an inmate to a single cell (DUF 16), and an "R" suffix does not necessarily place an inmate at risk of harassment or assault by other inmates (DUF 14). In the past, inmates with an "R" suffix have been successfully celled with other inmates. (DUF 15.)

On May 11, 2006, Plaintiff submitted an emergency grievance, CSPS-6-06-02480, wherein he raises once again his concern for his safety due to the "R" suffix in his file and requests that the suffix be removed. (DUF 32.) By this time, Defendant Gonzales had replaced Defendant Garza as Plaintiff's correctional counselor. (DUF 28, 31.) Defendant Gonzales reviewed the grievance. (DUF 33.) The

---

[2] The following facts are primarily taken from Defendants' Statement of Undisputed Facts ("DUF"), which are undisputed for the purposes of this motion. (Doc. 94-2.) Defendants' Statement of Undisputed Facts are supported by the third amended complaint, Plaintiff's deposition testimony, and Defendants' declarations.

4

grievance did not contain a specific risk to Plaintiff's safety beyond the general concern that inmates could discover the "R" suffix and could harm Plaintiff. (DUF 34, 35.) Defendant Gonzales denied the grievance. (Doc. 94-6 at 4.)

At the end of June 2006, Plaintiff was celled with Inmate Sharlhorne. (DUF 56.) Inmates who are cleared for double celling are not forced to have a specific cellmate. (DUF 17.) Either inmate can raise safety concerns and refuse to cell with the other inmate. (DUF 18.) Plaintiff, however, did not refuse Inmate Sharlhorne as a cellmate. (DUF 57.) Plaintiff and Inmate Sharlhorne played chess and talked with one another. (DUF 55.) Plaintiff believed that he could explain the reason for having the "R" suffix and Inmate Sharlhorne would not act violently. (DUF 58.)

On July 12, 2006, Defendant Gonzales oversaw Plaintiff as he reviewed his central file. (DUF 38.) Plaintiff explained that Inmate Sharlhorne posed a risk to his safety because if Inmate Sharlhorne discovered the "R" suffix he would attack Plaintiff. (DUF 39.) Defendant Gonzales replied that her supervisor was supposed to check into whether the "R" suffix was appropriate and whether the pilot program applied to inmates at California State Prison, Corcoran. (Pl's Dep. 32:10-33:10.)

On July 29, 2006, Inmate Sharlhorne demanded to see Plaintiff's 128G papers (classification papers). (Id. at 33:11-19.) Plaintiff provided the papers and attempted to explain the "R" suffix, but Inmate Sharlhorne immediately noticed the suffix and attacked Plaintiff. (Id. at 33:19-35:14.) Inmate Sharlhorne struck Plaintiff in the head and the two began to tussle. (Id. at 36:9-37:15.) Approximately half an hour later, Defendants Wilber and James approached the cell to pick up food trays. (DUF 64.) Inmate Sharlhorne informed Defendants Wilber and James of the altercation, and stated that he would attack Plaintiff again if the two were not separated. (DUF 65.) Defendants Wilber and James indicated that they understood and would let the sergeant know. (Pl's Dep. 39:13-21.) Defendants Wilber and James left. (DUF 66.) Approximately fifteen minutes later, Inmate Sharlhorne attacked Plaintiff for a second time. (Id.) Plaintiff did not suffer any appreciable injuries during the second fight. (Pl's Dep. 55:12-14.) Defendant Wilber returned and separated the inmates. (Id. at 47:19-48:25.)

**IV.   DISCUSSION**

Defendants contend that they are entitled to partial summary judgment because the undisputed facts demonstrate that (1) Plaintiff cannot prove each element of his failure to protect claim against

1 Defendants Sheppard-Brooks, Garza, and Gonzales; (2) Defendants Sheppard-Brooks, Gonzales, and
2 Garza did not cause the harm Plaintiff alleges he suffered; and (3) Plaintiff lacks standing to pursue his
3 failure to protect claims against Defendants Sheppard-Brooks, Garza, and Gonzales.  Defendants also
4 contend that Defendants Sheppard-Brooks, Garza, and Gonzales are entitled to qualified immunity and
5 that Plaintiff is barred from recovering compensatory damages for emotional distress from Defendants
6 Wilber and James.

### A.    Eighth Amendment – Failure to Protect

Under the Eighth Amendment, "prison officials have a [constitutional] duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brown, 511 U.S. 825, 837 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)).  To establish a violation of this duty, a prisoner must demonstrate that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834.  This requires the prisoner to satisfy both an objective and a subjective requirement.  First, the prisoner must demonstrate that he was, in objective terms, "incarcerated under conditions posing a substantial risk of serious harm." Id.  Second, the prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind. Id.  Prison officials must have been aware of facts from which the inference could have been drawn that a substantial risk of serious harm exists to the inmate, and the prison officials must have also drawn the inference. Id. at 837.

**1. Objective Requirement**

The central question presented here is: At what point, if any, did Plaintiff's "R" suffix give rise to conditions of confinement that objectively posed a substantial risk of serious harm to him? See id. at 834.  Three possibilities appear to exist.  First, Plaintiff could have been exposed to a substantial risk of serious harm by the very fact that he had an "R" suffix in his central file.  Second, a substantial risk of serious harm could have materialized once Plaintiff was authorized to be celled with another inmate.  Third, a substantial risk of serious harm could have crystalized after Plaintiff was housed with Inmate Sharlhorne specifically.

Defendants offer the following evidence on this issue.  Defendants assert that "R" suffixes are used for administrative purposes, are considered confidential, and are not disclosed to other inmates.

(Doc. 94-3 at ¶ 13; Doc. 94-4 at ¶ 16; Doc. 94-5 at ¶ 13.)  Moreover, Defendants maintain that in their experience, not every prisoner is hostile towards inmates with "R" suffixes and an "R" suffix does not necessary place an inmate at risk of being harassed or assaulted.  (Doc. 94-3 at ¶¶ 14-15; Doc. 94-4 at ¶¶ 17-18; Doc. 94-5 at ¶¶ 14-15.)

Defendants note that inmates with "R" suffixes have been double-celled in the past without any negative incidents arising from the presence of an "R" suffix in the inmate's file.  (Doc. 94-3 at ¶ 15; Doc. 94-4 at ¶ 19; Doc. 94-5 at ¶ 16.)  Defendants aver that inmates who are known to be incompatible are not housed together.  (Doc. 94-3 at ¶ 7; Doc. 94-4 at ¶ 10; Doc. 94-5 at ¶ 7.)  More specifically, in accordance with prison custom and practice, inmates with an "R" suffix are not housed with inmates who are known to have propensities for violence against inmates with "R" suffixes.  (Doc. 94-3 at ¶ 20; Doc. 94-4 at ¶ 20; Doc. 94-5 at ¶ 26.)  Furthermore, at the time a cellmate is assigned, an inmate can raise safety concerns and refuse to cell with the other inmate.  (Doc. 94-3 at ¶ 19; Doc. 94-4 at ¶ 12; Doc. 94-5 at ¶ 24.)

With respect to Inmate Sharlhorne specifically, Defendants argue that there was no indication prior to the attacks on July 29, 2006 that Inmate Sharlhorne posed a substantial risk of serious harm to Plaintiff.  Defendants emphasize that prior to being double-celled with each other, Plaintiff and Inmate Sharlhorne played chess and interacted with one another.  (Pl.'s Dep. at 28:13-20.)  Also, upon being double-celled, neither inmate raised any safety concerns or refused the other as a cellmate although they had an opportunity to do so.  (See id. at 31:9-11.)  Defendants note that the two inmates were housed together without incident for approximately one month.  (Id. at 28:6-9.)

Plaintiff paints a different picture.  Plaintiff alleges in his complaint that it is "prison tradition" for inmates to kill or seriously wound an inmate with an "R" suffix in order to remain in good standing with other prisoners so that he himself would not be attacked.  (Doc. 20 at 7.)  As an example, Plaintiff explains in his deposition that, based on his personal experience as a Crip gang member, Crips have an explicit code requiring members to assault any prisoner who is discovered to have a history of sexual offenses, which is typically denoted by an "R" suffix in the inmate's central file.  (See Pl's Dep. at 8:3-10:8.)  Inmate Sharlhorne was a Crip gang member and attacked Plaintiff in accordance with this very code.  (Id. at 29:10-12; see Doc. 49 at 71.)

7

Plaintiff also suggests that it was only a matter of time before other inmates would discover his "R" suffix if he were double-celled. Plaintiff asserts in his deposition that it is a rule among inmates that cellmates are required to disclose their classification papers to one another upon request. (Pl.'s Dep. at 34:16-22.) This is to ensure that both inmates are still "active" in the general population. (Id. at 34:18-21.) Plaintiff's "R" suffix, however, is denoted in his 128G classification papers. (Id. at 35:8-11.) Therefore, according to Plaintiff, Inmate Sharlhorne inevitably discovered Plaintiff's "R" suffix once Plaintiff resigned to Inmate Sharlhorne's repeated requests to see his 128G classification papers. (Id. at 35:22-25.)

Upon consideration of all the evidence presented, the Court finds that a reasonable juror could not find that Plaintiff faced a substantial risk of serious harm by virtue of having an "R" suffix in his central file alone. Defendants highlight that "R" suffixes are confidential and are not disclosed to other inmates. Plaintiff provides no evidence to the contrary. Thus, even if it is "prison tradition" to assault an inmate who has an "R" suffix, Plaintiff's "R" suffix, in of itself, did not pose a substantial risk of serious harm because there is no reason to believe, in the abstract, that the "R" suffix would ever be revealed. See e.g., Riddle v. Mondragon, 83 F.3d 1197, 1205-06 (10th Cir. 1996) (prisoners' general fear that their sex offense convictions *might* be discovered and that they *might* be attacked because of it was, without more, insufficient to demonstrate a substantial risk of serious harm within the meaning of the Eighth Amendment).

The Court also finds that a reasonable juror could not find that Plaintiff faced a substantial risk of serious harm simply because he was authorized to be double-celled. Even if it is an established rule among cellmates that classification papers are to be disclosed upon request, Defendants have produced undisputed evidence showing that the prison has policies in place to minimize the risk an inmate with an "R" suffix will be housed in a dangerous environment. Specifically, pursuant to prison custom and practice, inmates with "R" suffixes are not housed with inmates with known propensities for violence against inmates with "R" suffixes. Also, if an inmate has safety concerns regarding his cellmate, he has an opportunity to raise those concerns and refuse to cell with that inmate. Plaintiff offers no evidence demonstrating that these procedures were unavailable to him or otherwise insufficient in ensuring that he was housed with a suitable cellmate.

The Court's calculus changes, however, once Plaintiff was in fact double-celled with Inmate Sharlhorne. Defendants offer evidence that the two inmates were cordial to one another. According to Defendants, Plaintiff and Inmate Sharlhorne played chess together before being cellmates and the two did not refuse each other as cellmates. Plaintiff, however, offers evidence demonstrating that Inmate Sharlhorne posed a serious danger to him. Plaintiff asserts that Inmate Sharlhorne was a Crip member and was under a code to attack Plaintiff if he ever discovered that Plaintiff had an "R" suffix in his file. Also, as discussed above, Plaintiff asserts that Inmate Sharlhorne was bound to discover the "R" suffix because Inmate Sharlhorne repeatedly asked to see Plaintiff's classifications papers, which contained the "R" suffix notation. Based on the evidence presented, the Court finds that a reasonable juror could conclude that Plaintiff faced a substantial risk of serious harm when he was double-celled with Inmate Sharlhorne, a Crip member, despite having an "R" suffix.

**2. Subjective Requirement**

The question posed with respect to the subjective requirement of Plaintiff's Eighth Amendment claims then is: Were Defendants Sheppard-Brooks, Garza, and Gonzales actually aware that Plaintiff faced a substantial risk of serious harm when he was celled with Inmate Sharlhorne despite having an "R" suffix? If so, the defendants had an affirmative obligation under the Eighth Amendment to take reasonable steps to abate the danger. See Farmer, 511 U.S. at 847.

a. Defendant Garza

Defendant Garza argues that he was not aware of such a danger. Defendant Garza stresses that he was not assigned as Plaintiff's counselor when Plaintiff was first assigned Inmate Sharlhorne as a cellmate. (DUF 27.) In addition, Defendant Garza asserts that post-assignment he was never made aware of any threats of violence or any other indication that a physical confrontation between Plaintiff and Inmate Sharlhorne was likely. (Doc. 94-3 at ¶ 25.) Lastly, according to Defendant Garza, he was never aware of any actual risk to Plaintiff's safety created by the "R" suffix. (Id. at ¶ 22.)

Based on the foregoing, the Court finds that Defendant Garza has carried his initial burden on summary judgment of demonstrating the absence of a genuine issue of material fact with respect to his mental state. The burden thus shifts to Plaintiff to produce affirmative evidence demonstrating that a genuine issue of material fact exists. To avoid summary judgment, Plaintiff must have produced some

9

evidence tending to show that Defendant Garza was actually aware that Plaintiff faced a substantial risk of serious harm by being double-celled with Inmate Sharlhorne.

Plaintiff has failed to carry this burden. There is no evidence in the record demonstrating that Plaintiff ever alerted Defendant Garza to the fact that Inmate Sharlhorne, in particular, posed a serious risk of danger to Plaintiff. It therefore remains undisputed that Defendant Garza was unaware of any risk posed by Inmate Sharlhorne to Plaintiff. Accordingly, no reasonable juror could conclude that Defendant Garza acted with deliberate indifference. Defendant Garza is therefore entitled to summary judgment on Plaintiff's failure to protect claim.

b. Defendant Sheppard-Brooks

Defendant Sheppard-Brooks argues that she was not aware of a substantial risk of serious harm to Plaintiff due to the double-celling of Plaintiff with Inmate Sharlhorne. The undisputed evidence shows in this regard that Defendant Sheppard-Brooks chaired Plaintiff's April 27, 2006 ICC hearing to determine Plaintiff's housing assignment. (DUF 48.) Defendant Sheppard-Brooks, along with the ICC committee, decided that Plaintiff did not meet the criteria for single cell housing and cleared Plaintiff to be double-celled. (DUF 26.) That, however, is where Defendant Sheppard-Brooks' participation in the matter ended. The undisputed evidence shows that once Plaintiff was authorized for double-celling, Defendant Sheppard-Brooks took no part in determining which inmate Plaintiff ultimately celled with. (Doc. 94-4 at ¶ 8.)

Based on the foregoing, the Court finds that Defendant Sheppard-Brooks has carried her initial burden on summary judgment of demonstrating the absence of a genuine issue of material fact with respect to her mental state. The burden thus shifts to Plaintiff to produce affirmative evidence showing that a genuine issue of material fact exists. To avoid summary judgment, Plaintiff must have produced evidence tending to show that Defendant Sheppard-Brooks was actually aware that Plaintiff faced a substantial risk of serious harm by being double-celled with Inmate Sharlhorne.

Again, Plaintiff has failed to carry this burden. There is no evidence in the record that Plaintiff expressed his safety concerns regarding Inmate Sharlhorne to Defendant Sheppard-Brooks. At most, then, the evidence shows that Defendant Sheppard-Brooks was aware that Plaintiff had an "R" suffix and that he was being double-celled as a general matter. As explained above, that does not equate to

knowledge of a substantial risk of serious harm. Accordingly, no reasonable juror could conclude that Defendant Sheppard-Brooks acted with deliberate indifference. Defendant Sheppard-Brooks is entitled to summary judgment on Plaintiff's failure to protect claim.

### c. Defendant Gonzales

Defendant Gonzales also agues that he was not aware of a substantial risk of serious harm to Plaintiff due to the double-celling of Plaintiff with Inmate Sharlhorne. Defendant Gonzales asserts that he was never actually aware of any actual risk to Plaintiff's safety due to the "R" suffix. (Doc. 94-5 at ¶ 27.) In particular, Defendant Gonzales asserts that he was never aware of any threats of violence or any other objective indication that an altercation between Plaintiff and Inmate Sharlhorne was likely. (Id. at ¶ 32.) Nor, according to Defendant Gonzales, did he ever know or have reason to believe that Plaintiff would disclose his "R" suffix to Inmate Sharlhorne. (Id. at ¶ 33.)

Based on the foregoing, the Court finds that Defendant Gonzales has carried his initial burden on summary judgment of demonstrating the absence of a genuine issue of material fact with respect to his mental state. The burden thus shifts to Plaintiff to produce affirmative evidence demonstrating that a genuine issue of material fact exists. To avoid summary judgment, Plaintiff must have produced some evidence tending to show that Defendant Gonzales was actually aware that Plaintiff faced a substantial risk of serious harm by being double-celled with Inmate Sharlhorne.

There is evidence that Plaintiff alerted Defendant Gonzales to his safety concerns regarding his "R" suffix on two occasions. First, on May 11, 2006, Plaintiff submitted an emergency grievance in which he states that the "R" suffix places him in an "unreasonable danger of assault." (Doc. 94-6 at 4.) Nowhere in the grievance, however, does Plaintiff express safety concerns regarding Inmate Sharlhorne specifically. This is not surprising. The grievance and Defendant Gonzales' response to the grievance were filed before Plaintiff was double-celled with Inmate Sharlhorne. Therefore, a reasonable juror could not conclude from this grievance that Defendant Gonzales was aware of a substantial risk of harm posed by double-celling Plaintiff with Inmate Sharlhorne.

Second, on July 12, 2006, Defendant Gonzales oversaw Plaintiff as he reviewed his central file. (DUF 38.) During that time, Plaintiff informed Defendant Gonzales that the "R" suffix needed to be removed because if it was ever discovered by Inmate Sharlhorne, or any other inmate, Plaintiff would

be attacked. (Pl.'s Dep. 32:10-16.) However, while Plaintiff apparently identified Inmate Sharlhorne as a potential aggressor during this conversation, there is no evidence that Plaintiff communicated to Defendant Gonzales any specific circumstances that would indicate that Inmate Sharlhorne posed an actual threat to Plaintiff. Notably absent is any evidence demonstrating that Plaintiff told Defendant Gonzales that Inmate Sharlhorne was asking to see his classification papers, that Inmate Sharlhorne was a Crip member, and that Crip members follow a code requiring all members to attack inmates with "R" suffixes. In fact, Plaintiff concedes in his deposition that he never alerted prison officials to the fact that Inmate Sharlhorne was a Crip member and that Plaintiff was likely to be attacked in accordance with Crip code. (See Pl.'s Dep. at 30:21-31:2.)

It is not incumbent on Plaintiff to show that Defendant Gonzales knew with "moral certainty" that Plaintiff was going to be attacked "at a given place at a certain time." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). See also Farmer, 511 U.S. at 843 (prison official may not escape liability by showing that he did not know that the plaintiff was likely to be assaulted by the specific prisoner who eventually committed the assault). Nevertheless, to impose liability on Defendant Gonzales, Plaintiff must produce evidence demonstrating that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." Id. at 837. Plaintiff has not done so here. Accordingly, no reasonable juror could conclude on the evidence presented that Defendant Gonzales acted with deliberate indifference. Defendant Gonzales is therefore entitled to summary judgment on Plaintiff's failure to protect claim.[3]

### B. Damages for Emotional Distress

Defendants argue that Plaintiff cannot recover compensatory damages for mental or emotional injuries from Defendants Wilber and James. (Doc. 94-1 at 15.) Defendants maintain that Plaintiff is barred from recovering such damages under 42 U.S.C. § 1997e(e) because Plaintiff did not suffer any physical injury as a result of the second attack, the attack Defendants Wilber and James allegedly failed to prevent. (Id.) The Court agrees.

Pursuant to 42 U.S.C. § 1997e(e), a prisoner may not bring a federal civil action for mental or

---

[3] In light of the Court's finding that Plaintiff has failed to demonstrate a genuine issue of material fact with respect to his Eighth Amendment claims against Defendants Sheppard-Brooks, Garza, and Gonzales, the Court need not address Defendants alternative arguments for summary judgment based on causation, standing, and qualified immunity.

12

emotional injury unless he is able to first show physical injury that is "more than *de minimus*." Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002). Here, Plaintiff concedes that he suffered no appreciable physical injury from the second attack. When explicitly asked at his deposition whether he suffered any injury as a result of his second fight with Inmate Sharlhorne, Plaintiff responded: "Not that I recall, no." (Pl's Dep. 55:12-14.) Accordingly, § 1997e(e) bars Plaintiff from recovering compensatory damages for mental or emotional distress from Defendants Wilber and James.

## V. CONCLUSION

For the reasons set forth above, it is **HEREBY RECOMMENDED** that Defendants' October 19, 2010 motion for partial summary judgment (Doc. 94) be **GRANTED**. Summary judgment should be entered in favor of Defendants Sheppard-Brooks, Garza, and Gonzales with respect to Plaintiff's Eighth Amendment failure to protect claims. Summary judgment should also be entered in favor of Defendants Wilber and James on the issue of whether Plaintiff may recover compensatory damages from them for emotional distress.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are forewarned that the Court does not anticipate granting extensions of time for this purpose. In addition, the parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 2, 2011**                              /s/ Jennifer L. Thurston
                                                          UNITED STATES MAGISTRATE JUDGE